## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JOHN BEVINEAU,             )
                             )
           Petitioner,        )
                             )
      vs.                     )       **Case number 4:06cv0609 DJS**
                             )                       **TCM**
DAVE DORMIRE and      )
CHRIS KOSTER, Attorney General  )
for the State of Missouri,[1]     )
                             )
         Respondents.     )

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. §2254 petition of John Bevineau, a Missouri prisoner, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

## Background

In July 1999, Glenn Strong and a friend were driving in the City of St. Louis. (Resp. Ex. A at 245, 246.) As they passed an alley, Strong thought he saw a man on his hands and knees, bleeding. (Id. at 246.) They stopped the truck; Strong got out to investigate. (Id.) Strong discovered that it was a naked woman. (Id.) A man, later identified as Petitioner, was present and was pacing back and forth, shouting about money and his watch. (Id. at 247, 251.) Strong testified that he saw Petitioner kick Jones onto her back and then hit her in the

---

[1]Because Petitioner is challenging a sentence to be served in the future, the Attorney General of Missouri, Chris Koster, will be added as a proper party respondent. See Rule 2(b), Rules Governing Section 2254.

face with a brick.  (Id. at 248-49.)  Strong's friend called the police on his cell phone, and they arrived about ten minutes later.  (Id. at 251, 252.)  Officer Anthony Martin found the victim, later identified as Charade Jones, unresponsive and bleeding heavily.  (Id. at 327.)  Paramedics arrived and found Jones covered in blood.  (Id. at 237, 238, 278.)  Her heart stopped.  (Id. at 239.)  The paramedics performed cardiopulmonary resuscitation ("CPR"), but were unable to regain a pulse.  (Id. at 239.)  She was pronounced dead at the hospital. (Id. at 322, 240.)

A search of the scene uncovered a man's wristwatch and bloody bricks, leaves, sticks, and boards.  (Id. at 278, 281, 283-84, 296, 298-302, 334, 335, 340, 342-46, 349.)  Detective Phil Wasem reported to the scene and took statements from Glenn Strong and Derrick Jones ("Derrick"), who had appeared on the scene after Strong.  (Id. at 357-59.)  Based on Strong's and Derrick's description of Petitioner and on other leads, Petitioner was arrested and charged with first degree murder, armed criminal action, and being a prior and persistent offender.  (Resp. Ex. B at 26-27.)

The jury pool for Petitioner's trial consisted of sixty persons, twenty-four were described as African-American and thirty-six as Caucasian.  (Id. at 79-88.)  After strikes for cause, the panel consisted of eight African-Americans and sixteen Caucasians.  (Id. at 180-88.)  The panel from which alternates would be selected consisted of two African-Americans and two Caucasians. (Id.)  The prosecution exercised its peremptory challenges to strike three African-Americans and two Caucasians from the main panel and one African-American from the alternate panel.  (Resp. Ex. A at 191, 192.)  The defense struck one

African-American and four Caucasians from the main panel, and one Caucasian from the alternate panel.  (Id.)  Thus, the final jury consisted of four African-Americans and eight Caucasians.  (Id.)  Neither party made a Batson[2] motion.  (Id.)

At trial, Derrick testified on direct examination that he saw a nude, bleeding woman come out of the back of a vacant building.  (Id. at 357, 358.)  As he approached her, ". . . all of a sudden a brick came out of nowhere, hit her in the top of the head."  (Id. at 358.)  On cross-examination, the following exchange occurred:

> [Trial counsel]:  Now, you originally, right after this, you went down and you were interviewed at Homicide, right?
>
> [Derrick]:  Correct.
>
> [Trial counsel]:  And that was Detective Wasem was there, correct?
>
> [Derrick]:  I would assume.  I don't know the detective.
>
> . . .
>
> [Trial counsel]:  Okay.  And during this interview did he ask you what happened?                                    [Derrick]:  Yes.
>
> [Trial counsel]:  And you told him to the best of your ability?
>
> [Derrick]:  Correct.
>
> [Trial counsel]:  Okay.  Do you remember during that time that you never said anything about a brick being thrown?
>
> [Derrick]:  I am pretty sure I said a brick was thrown.

_____

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

[Trial counsel]:  Have you ever seen or read any parts of your statement of that night?                                                    [Derrick]:  No.

(Id. at 369.)

Detective Wasem testified on cross-examination that his police report dated July 17, 1999, was based on statements taken the day before from Derrick and Strong.  (Id. at 459.) He acknowledged that his July 17 report did not indicate that Derrick said that he saw Petitioner throw a brick.  (Id. at 460-61.)  On redirect, the prosecution asked him, "With regard to Derrick Jones, you were asked as to whether or not he had ever made a statement to you that he saw the subject – " (Id. at 463.)  Trial counsel objected, arguing that testimony regarding statements made by Derrick after the statements included in the July 17 report constituted impermissible hearsay and was improper bolstering.  (Id.)  The following day, the trial court allowed Detective Wasem to retake the stand.  (Id. at 467.)  He then testified, over trial counsel's renewed objection, that in a second statement on August 5, 1999, Derrick had stated that he saw Petitioner beating the victim and throw a brick at her head.   (Id. at 468-69.)

As noted above, the jury returned a verdict of guilty of second degree murder and armed criminal action.

Petitioner appealed from the verdict, arguing only that the trial court had erred by allowing Detective Wasem to testify that Derrick had told him that he had seen Petitioner throw a brick.  (Resp. Ex. C at 9.)  This testimony was a prior consistent statement, impermissible hearsay statement, and an improper bolstering of a witness's testimony on a

key subject.[3]  (Resp. Ex. C at 9.)  His conviction was affirmed in a one-page order and brief memorandum.  (Resp. Ex. E.)  The appellate court found, in relevant part, that "Derrick Jones was not the only witness to testify that [Petitioner] hit the victim in the face with a brick. Glenn Strong also testified that [Petitioner] hit victim in the face with a brick and [Petitioner] admitted hitting the victim with a brick when he gave his version of events at trial. Under such circumstances, Wasem's testimony could not have prejudiced [Petitioner]." (Id. at 2.)

The appellate court's mandate issued on October 23, 2002.  (Resp. Ex. F.)  Petitioner did not seek a transfer of his appeal to the Missouri Supreme Court.  (Id.)

Petitioner did seek post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Resp. Ex. G at 3-30.)  Counsel was appointed and an amended motion was filed with one ground:  his trial counsel was ineffective for failing to raise a Batson challenge based on the prosecution's using the majority of its peremptory challenges to strike African-American venirepersons from the jury panel.  (Id. at 40-53.)  The court found, in relevant part, as follows.

> [Petitioner] notes that peremptory strikes were used on venireperson Donna Allen an African-American widow with no high school degree and a job as a stocker at a grocery.  Cherise Henderson, a single, thirty-eight year old African-American with twelve years of education and a job as a postal worker, and Mary Hopson a single forty-four year old African-American female with twelve years of education and a job in housekeeping.  [Petitioner] states that the removal of these venirepersons left him with a jury of four African-

---

[3]Petitioner had testified that he had hit Jones during the course of a struggle with her as she attempted to hurt him.

Americans, six Caucasian-Americans, one Caucasian-American alternative [sic] juror, and one African-American alternate juror.

. . .

The Court finds that [Petitioner's] claim in this proceeding is without merit based on the presence of four African-Americans on [Petitioner's] jury and one of two alternates. The State did not use all of its peremptory strikes on African-Americans. . . . The Defense used its peremptory strikes on six Caucasian-Americans and one African-American. The State used its peremptory strikes on four African-Americans and two Caucasian-Americans.

(Id. at 56, 59.)

On appeal, Petitioner argued the motion court had erred in denying him relief without an evidentiary hearing because "the mere presence of African-Americans on [his] jury did not . . . undercut the validity of any Batson claim that counsel could have made on [Petitioner's] behalf . . . ." (Resp. Ex. H at 17.) The appellate court rejected this argument, finding, in part:

[Petitioner] argues his trial counsel's failure to raise a Batson challenge was unreasonable because nothing in voir dire indicated that the struck jurors were unqualified to serve on the jury. [Petitioner] further argues that the mere presence of four African-Americans on his jury does not undercut the validity of any Batson claim that counsel could have made on his behalf. [Petitioner] claims that "[b]ut for trial counsel's failure, there is a reasonable probability that a fair and impartial jury, untainted by racial discrimination in its selection . . . would have acquitted [Petitioner] or convicted him of the lesser included offense of voluntary manslaughter."

Under the facts presented here, even though trial counsel did not raise a Batson challenge, [Petitioner] failed to establish that he suffered any prejudice as a result. To be entitled to a presumption of prejudice resulting from defense counsel's ineffective assistance during the jury selection process, a post-conviction movant must show that a biased venireperson ultimately served as a juror. Here, [Petitioner] does not argue that any of the jurors who served on his jury were biased against him. Rather, [Petitioner] alleges that

if his jury was untainted by racial discrimination, then it would have acquitted him or convicted him of a lesser offense.[4]  [Petitioner] fails to support this argument with specific facts of how his trial would have been different had a <u>Batson</u> challenge been made.

(Resp. Ex. J at 4, 5.) (Ellipse in original.) (Internal citations omitted.)

The appellate court issued its mandate on June 16, 2002.  (Resp. Ex. K.)

Petitioner now presents two grounds for federal habeas relief.  First, he argues that the trial court violated his constitutional rights to due process and equal protection of the law under the Fifth and Fourteenth Amendments by allowing Detective Wasem's testimony that Derrick Jones said he saw Petitioner throw a brick at the victim.  Second, he argues that his trial counsel was ineffective for failing to raise a <u>Batson</u> challenge when the prosecution exercised its peremptory strikes to remove African-Americans from the jury panel.

Respondents counter that the petition is barred by the one-year statute of limitations or, alternatively, is without merit.  In support of their first argument, Respondents allege that 85 days passed between October 2, 2002, the expiration of the time for seeking further direct review of his conviction, and the filing of his Rule 29.15 motion on December 26, 2002, and 294 days passed between June 16, 2005, the date on which the appellate court's mandate issued, and April 6, 2006, the date on which the § 2254 was mailed.  Thus, a total of 379 untolled days had passed before the petition was filed; it was 14 days too late.

_____

[4]The Court notes that the jury did convict Petitioner of a lesser offense.  He was charged with first degree murder and convicted of second degree murder.

**Discussion**

Statute of limitations.  Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner may file for federal habeas relief within one year "of the date when the judgment became final by the 'conclusion of direct review' or 'the expiration of the time for seeking such review.'" **Riddle v. Kemna**, 523 F.3d 850, 853 (8th Cir. 2008) (en banc.)  Although "direct review in § 2244(d)(1)(A)" has been "uniformly interpreted . . . to encompass review of a state conviction by the Supreme Court," **id.**, the Supreme Court cannot directly review a Missouri lower-court decision if the petitioner did not seek discretionary review by the Missouri Supreme Court of the appellate court's adverse decision, **id.** at 855.  Thus, without a motion to transfer his appeal to the Missouri Supreme Court, the United States Supreme Court could not have reviewed Petitioner's direct appeal, and "'the expiration of time for seeking [direct] review' does not include the 90-day period for filing certiorari." **Id.** (alteration in original). In the instant case, excluding this 90-day period, "'the expiration of time for seeking [direct] review' occurred [on October 2, 2006] when [Petitioner] did not file the first motion to transfer (15 days after the decision by the Missouri Court of Appeals)." **Id.** at 856 (first alteration in original).

As in **Riddle**, however, § 2244(d)(1)(A) "does not begin *if* the alternate trigger, 'conclusion of direct review, occurs later." **Id.**  The Missouri Court of Appeals issued its mandate in Petitioner's appeal on October 23, 2002 – twenty-one days after the expiration

of time for seeking direct review. Accordingly, rather than being fourteen days too late, Petitioner filed his petition seven days before the statute of limitations ran.

Although the petition is timely, both grounds are, for the reasons set forth below, without merit.

Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts only if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)). "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Id.** (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original). "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** (quoting Davis, 423 F.3d at 874) (alteration in original).

Ground One: Detective Wasem's Testimony. Petitioner first argues that his constitutional rights were violated by the admission of Detective Wasem's testimony that Derrick Jones told him he saw Petitioner throw a brick at Charade Jones's head. The state appellate court found that Petitioner had failed to establish any prejudice from this testimony.

"[I]n habeas corpus proceedings, it is not within [the federal courts's] province to 'reexamine state court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)). See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court."). Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne v. Parched**, 411 F.3d 911, 917 (8th Cir. 2005) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)); accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006); **Amrine v. Bowersox**, 238 F.3d 1023, 1032-33 (8th Cir. 2001). See also **Nebinger v. Ault**, 208 F.3d 695, 697 (8th Cir. 2000) ("Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation."). "[T]his due process standard mandates a greater showing of prejudice that is needed to support a finding of plain error on appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994).

Under this narrow standard, this Court cannot characterize the trial court's admission of Detective Wasem's testimony about Derrick Jones's statement as a violation of Petitioner's due process rights. Strong testified that he saw Petitioner hit Charade Jones in the face with a brick as she lay on her back. Derrick Jones testified that he saw a brick come "out of nowhere" and hit Charade Jones on the top of her head. Trial counsel cross-examined Derrick about whether he had told Detective Wasem about the brick. Petitioner testified that he hit her in the head with a brick when she came at him. Any improper bolstering of Derrick's credibility[5] by Detective Wasem's testimony clearly did not prejudice Petitioner. Indeed, although the State asked for a conviction of first degree murder, which required the jury to find that Petitioner caused Charade Jones's death by striking her, that he intended to, and that he did so after deliberation and not in lawful self-defense, the jury found him guilty of second degree murder, which differed from the charge of first degree murder in that it did not require a finding of deliberation. (Resp. Ex. B at 110, 112.)

In the case of **Oliver v. Wood**, 96 F.3d 1106 (8th Cir. 1996), the habeas petitioner argued that the admission of a hearsay statement by a co-defendant violated his due process rights. The co-defendant had made a recorded statement that he did not remember much of what happened the night his twelve-year old niece had been raped. **Id.** at 1107. In an unrecorded statement, however, he stated that he had seen petitioner rape her and then he had attempted to as well. **Id.** After the co-defendant's recorded statement was admitted at the

---

[5]The Court notes that Derrick also testified that he had been convicted of attempting to sell cocaine and burglary and was then serving a sentence on that conviction.

petitioner's trial, the court permitted a police officer to testify about the contents of the unrecorded statement. **Id.** The state appellate court held that the testimony about the unrecorded statement was admissible. **Id.** The Eighth Circuit held that, given the presumption of correctness accorded the state courts's findings and the totality of the circumstances, the admission of the hearsay evidence was not a due process violation. **Id.**

The testimony now at issue is not nearly as damming. The jury heard other testimony that Petitioner hit Jones in the head with a brick. One witness testified that he did so as she lay on her back. Detective Wasem's testimony that Derrick Jones had made an earlier statement consistent with his trial testimony did not so fatally infect Petitioner's trial as to deny him due process.

Ground Two: Ineffective Assistance of Trial Counsel. Petitioner next argues that his trial counsel was ineffective for failing to raise a Batson challenge when the prosecution exercised its peremptory challenges to strike African-Americans from the jury panel.

The Sixth Amendment right of the accused to the assistance of counsel is the right to effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morris, 477 U.S. 365, 377 (1986)). "Effective assistance is representation that 'play[s] the role necessary to ensure that the trial is fair.'" **Id.** (quoting Strickland v. Washington, 466 U.S. 668, 685 (1984)) (alteration in original). "To show a constitutional violation of the right to counsel a convicted defendant must show first, that

counsel's performance was deficient, and second, that counsel's errors prejudiced the defense." **Id.** (citing <u>Strickland</u>, 466 U.S. at 687).

To establish that counsel's performance was deficient, a petitioner must establish that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **<u>Greiman v. Thalacker</u>**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 687). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** (quoting <u>Strickland</u>, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **<u>Carroll v. Schriro</u>**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). "'In making this determination, a court . . . must consider the totality of the evidence before the judge or jury.'" **<u>Lawrence v. Armontrout</u>**, 31 F.2d 662, 665 (8th Cir. 1992).

Petitioner alleges that his trial counsel was ineffective for not raising a <u>Batson</u> challenge because he would have been acquitted or convicted of a lesser offense if the jury had been "untainted by racial discrimination." (<u>See</u> Resp. Exs. H at 24, J at 4, 5.)

In **<u>Batson</u>**, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on the account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89. The Court has "never held[, however,] that the

- 13 -

Sixth Amendment requires that 'petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.'" **Id.** at 85 n.6 (quoting <u>Taylor v. Louisiana</u>, 419 U.S. 522, 538 (1975)).

In the instant case, the trial court asked if either party wished to make a <u>Batson</u> challenge; both parties answered affirmatively that they did not. In order to prevail on his ineffective assistance claim, Petitioner must prove that the failure of trial counsel to raise a <u>Batson</u> challenge was either deficient or prejudicial to Petitioner's case. If Petitioner fails to prove either prong, the other inquiry need not be addressed. <u>See</u> **Strickland**, 466 U.S. at 697; **<u>Morales v. Ault</u>**, 476 F.3d 545, 550 (8th Cir. 2007); **<u>Hoon v. Iowa</u>**, 313 F.3d 1058, 1061 (8th Cir. 2002).

The failure of trial counsel to raise a <u>Batson</u> challenge is not presumptively prejudicial; rather, the question is whether, had such challenge been made, there is a reasonable likelihood that the outcome of Petitioner's trial would have been different. <u>See</u> **<u>Young v. Bowersox</u>**, 161 F.3d 1159, 1160-61 (8th Cir. 1998). In **<u>Reed v. Norris</u>**, 195 F.3d 1004, 1006 (8th Cir. 1999), the Eighth Circuit held that the "overwhelming evidence of [the petitioner's] guilt at trial" made it impossible for him to establish prejudice from his trial counsel's failure to make a <u>Batson</u> challenge. Similarly, the overwhelming evidence of Petitioner's guilt established by two disinterested eyewitnesses's testimony and by his own testimony makes it impossible for him to establish prejudice from trial counsel's failure to make a <u>Batson</u> challenge to the prosecutor's use of peremptory challenges to remove three

African-Americans from the panel, leaving five to serve, and two Caucasians, leaving fourteen to serve on a jury that convicted Petitioner of a lesser-included offense.

Petitioner's second ground is also without merit.

## Conclusion

Petitioner's petition for federal habeas corpus relief was timely-filed, but is without merit. Accordingly,

**IT IS HEREBY ORDERED** that Chris Koster, the Attorney General for the State of Missouri, is added as a Respondent.

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of John Bevineau be DENIED without further proceedings.

The parties are advised that they have **up to and including March 17, 2009**, by which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this 4th day of March, 2009.